Spear, J.
Section 1 of article 13, of the constitution, reads, as follows: “ The general assembly shall pass no special act conferring corporate powers. ” It is this section which the plaintiff in error contends is violated by the act in question. The claim is not that the conferring of additional power on the commissioners of Hamilton county respecting the improvement contemplated by the act is inhibited by the section above quoted, but that the power to appoint, or recommend, trustees, by the village councils of Norwood and Pleasant Ridge, attempted to be given by the act, is in violation of the section. That the act is a special act there is no sort of doubt. The only question, therefore, is: Does it confer corporate power on the municipalities of Norwood and Pleasant Ridge?
It is contended, in support of the law, that, save as to the commissioners, there is no attempt to confer power at all, and if there is, it is on the councils, and not on the municipalities. Power, we think, is clearly given by section three, wherein it is provided that the commissioners shall "appoint three freeholders of the county as trustees, one of whom shall be nominated and recommended by the council of the village of Norwood and one by the council of the village of Pleasant Ridge.” Not only are the councils empowered to nominate, but they are, by the peremptory language of the clause, required to do it. The nomination thus commanded is, practically, the equivalent of an appointment. The commissioners are authorized to appoint one freeholder pot named by the councils, and one only, and nowhere in the act is authority given to appoint in case the councils fail to nominate. Nor is there doubt, as it seems to us, that whatever, by way of power, is conferred by this, language, is given to the municipalities. The council is the governing body of the corporation, its representative *657 and legislative body as well. By its acts, and by its acts only, as a general rule, is the corporation bound. Whatever power resides in the municipality must be worked out through the council. Power, therefore, given in terms to the council, is in effect given to the municipality.
It is further contended that even if the power is found to be one exercised by the municipalities, it still is not a corporate power, because it is not to be exercised with respect to the business, or the government, or the affairs of the corporations; that the improvement contemplated has no relation whatever to the business or affairs of either corporation, but is wholly an outside and independent matter.
We think that this proposition cannot be maintained. It is proper to remark, at the outset, that the fact alone that the general assembly has undertaken to confer power on a corporate body raises a strong presumption that the power thus sought to be conferred is intended to be corporate power, and, in the absence of a clear showing to the contrary, the presumption stands. In the present case it would be presumed that the duties required of the councils do relate to the affairs of the corporations, for it would be remarkable for the legislature to attempt to impose duties upon a village council in respect to a matter in which the municipality which that body represents has no concern. If the duty here enjoined is not a corporate duty, then it is simply an advisory duty, and it is not usual to cast upon village councils duties merely advisory. Such a provision would at least be novel, and the entire scheme should be scrutinized with unusual care before a court would be justified in concluding that duties of that character had been imposed.
An examination of what is proposed to be done under this act will, we think, make it entirely clear that important business interests of the two municipalities were to be materially affected by the public improvement which is termed by counsel “an outside and independent matter.” The project is the improvement of a turnpike road running from the north corporation line of Cincinnati to a point in Silver-ton, some four and a half miles, by widening, grading, and *658 improving the same, including necessary bridges, culverts, curbs and sidewalks. The road for the entire distance is to be widened to a uniform width of eighty feet. From the city line to Duck Creek road the driveway is to be forty-eight feet wide, and from thence to Harris avenue in Nor-wood it is to be sixty feet wide, and this portion is to be improved by laying asphaltum or brick pavement. From Harris avenue to the northern extremity, the improvement is to be by grading and macadamizing. The sidewalks are to be of concrete, and are to be six feet in width on each side of the roadway the entire distance. The expense in the first instance is to be met by bonds of the county to be issued and sold as the construction proceeds. Then one-half the costs and expense is to be assessed by the foot front upon the lands abutting thereon upon the several sections. Between the Cincinnati line and Harris avenue the cost and assessment shall not exceed ten dollars per foot front, and between Harris avenue and the Plainfield road six dollars. The remaining half of the entire cost and expense to be paid by the county of Hamilton by a tax placed upon the general duplicate.
Thus is presented a project for an extensive road improvement to be made under a special law, by county commissioners, without notice to property owners liable for assessments, or opportunity for a hearing, involving an outlay, stated by counsel and not controverted, to amount to $800,000, the work to be of a character usually made by municipalities under authority of general laws, after full notice to those to be affected, and full opportunity to be heard. It is not stated in so many words, but the fact, we think, sufficiently appears by'the record, that the turnpike thus to be improved runs through the villages of Nor-wood and Pleasant Ridge, and the effect of the act, therefore, is, among other things, to improve village streets, and to do this in an unusual way. When accomplished, the streets thus improved (including the sidewalks and any bridges), would still remain village streets, as to which, by sections 1692 and 2640, Revised Statutes, the council would have the care, supervision and control, and would *659 be required to keep open, in repair, and free from nuisance. The plan, then, is, to conduct the improvement of these streets, by virtue of a special act of the legislature, and the agency in carrying forward the work given the municipalities is, by their councils, to appoint two of the three trustees, who are to have the immediate control. As the thing to be done includes the improvement of streets of the villages it would seem clear that the specified action of the councils does concern the business and affairs of municipalities, and that, tested by the definition of the term “corporate power” contended for by counsel for defendant in error, or by any definition given in the books, the naming of trustees by the councils is the exercise of corporate power.
The principle involved, it seems to us, is covered by the case of The State ex rel v. Cincinnati, 23 Ohio St., 455. By the act brought in review in that case the trustees of the commercial hospital were authorized to adopt rules for the government, etc., of the institution, which should be submitted to the city council of Cincinnati for approval, and when approved should have the force in law of other ordinances of the city. This court held that the effect of the act would be to put the rules and regulations for the government of the hospital under the legislative control of the city council; that the exercise of this control was corporate power, and, as the act in question was a special act, it was in conflict with section 1, article 13, of the constitution, and therefore void. As, under the provisions of the hospital act that institution could not be managed save by rules dictated by the city council, and which rules, when approved, became ordinances, thus clothing the city with power to legislate by a special act, so under this road improvement act the selection of a majority of the trustees is virtually done by the village councils, and the work of the improvement is managed by those trustees, thus in effect providing for the improvement of village streets by special act. If the. office to be performed by the city council in the hospital case was an exercise of corporate power which could not be given 'by special act, surely the action *660 of the village councils in this case cannot be less so. See, also, The State v. Pugh, 4B Ohio St., 98, third paragraph of syllabus, and text of the' opinion of Owen, J., applicable to that paragraph.
But it is contended that even if corporate power has been conferred by the act, still the law may stand because the parts are separable, and the clause in question may be disregarded without affecting the remainder. Recurring again to the act we find a total want of authority for appointing trustees independent of nomination by the council, and of authority for carrying forward the improvement save by the action of the trustees whose appointment depends upon such nomination. The trustees are to give bond in $10,000 each, and are to receive compensation. They are to appoint a surveyor and assistants, and fix their compensation. They are to establish the grade of the road. They are to recommend*to the commissioners the private property necessary tobe condemned, and are to employ counsel to prepare condemnation suits, and assist in the prosecution of the same. They are to estimate the cost of the improvement, and report to the commissioners, and are to supervise the work. In short, they are to build the road. These acts are indispensable. Without their performance by somebody the work cannot be done, and as the authority given the commissioners, to be found in the first section of the act, is to improve “ in the manner and means hereinafter provided,” and as the means above described are the only means provided, it seems evident that if those means fail the whole enterprise must also fail. Indeed, looking at the purpose and scope of the act, it is apparent that, but for the provision for the selection of trustees by the village councils, the act would not have been passed.
We do not forget the ancient rule that all presumptions are in favor of the constitutionality of acts of the legislature, and suppose that the presumption still stands notwithstanding an apparent popular belief to the contrary. But when the court is clearly of opinion that an act is in conflict with the constitution, the duty to so declare is imperative. We are clearly satisfied that this act assumes to *661 confer corporate power on the municipalities of Norwood and Pleasant Ridge, and is thus in conflict with section 1, of article 13, of the constitution. We are also satisfied that without the exercise of those powers the purposes of the act cannot be carried out, and that, therefore, the act is inoperative.
Still other objections to the act, equally fatal, as we think, exist. This opinion undertakes to deal only with such questions as were argued by counsel.

foidgment reversed and petition dismissed.